**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| ERIC M.,[1] | : Case No. 3:25-cv-00098 |
| | : |
|     Plaintiff, | : Magistrate Judge Peter B. Silvain, Jr. |
| | : (by full consent of the parties) |
| vs. | : |
| | : |
| COMMISSIONER OF THE SOCIAL | : |
| SECURITY ADMINISTRATION, | : |
| | : |
|     Defendant. | : |

---

**DECISION AND ENTRY**

---

This matter is before the Court for review of Plaintiff Eric M.'s claim challenging the Social Security Administration's denial of his application for Supplemental Security Income (SSI). This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #7).

**I.      Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff filed an application for SSI on August 22, 2022, due to several impairments, including seizures with memory loss, depression, anxiety, PTSD, panic attacks, gastroparesis, chronic vomiting, loss of 10 pounds in 2 weeks, chronic fatigue, Ehlers-Danlos Syndrome, and insomnia. (Doc. #7-6, *PageID* #356). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Nicholas J. Schwalbach on February 5, 2024. Thereafter, ALJ Schwalbach issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since August 22, 2022, the application date.

Step 2: He has the following severe impairments: seizure disorder, a reading disorder, Ehlers-Danlos syndrome, a history of cyclical vomiting associated with marijuana abuse, a right shoulder tear status post arthroscopy with debridement and SLAP repairs, bipolar disorder, anxiety, and autism spectrum disorder.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except he is limited to frequent reaching with the right upper extremity. He is limited to no climbing of ladders, ropes, or scaffolds with occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs. He is limited to no work around unprotected heights, dangerous machinery, or open bodies of water, and he is limited to no driving of automotive equipment. He is limited to performing simple, routine, and repetitive tasks. He is limited to occasional contact with coworkers and supervisors but with no public contact. He is

> limited to no fast-paced production work or jobs that involve strict production quotas. He is limited to jobs that involve very little, if any, change in the job duties or work routine from one day to the next."
>
> He is unable to perform any past relevant work.

Step 5:     Considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #7-2, *PageID* #s 42-64).  Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since August 22, 2022, the date the application was filed. *Id.* at 64.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 40-64), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In his Statement of Errors, Plaintiff contends that the ALJ "failed to carry the Step Five burden and failed to reconcile the inconsistencies within both his findings and the findings of the prior administrative psychological findings and, thus, failed to build an accurate and logical bridge." (Doc. #8, *PageID* #2531) (capitalizations omitted). Specifically, Plaintiff alleges that ALJ Schwalbach erred in his evaluation of the prior administrative psychological findings of state agency reviewers Audrey Todd, Ph.D., and Kristen Haskins, Ph.D., and the opinion of consultative examining psychologist Bryce Gray, Psy.D. *Id.* In addition, Plaintiff avers that, because Dr. Todd and Dr. Haskins failed to engage in a "fresh look" analysis of the record, the ALJ erred in finding their opinions persuasive, and in doing so, erred at Step Five and did not support his decision with substantial evidence. *Id.* at 2533. In response, the Commissioner maintains that the ALJ evaluated the medical opinions consistent with the regulations and that his decision is supported by substantial evidence. (Doc. #9, *PageID* #s 2539-46).

### ALJ's Treatment of Prior Administrative Findings

First, Plaintiff takes issue with the ALJ's treatment of the prior administrative psychological findings of state agency reviewers Todd and Haskins, especially in relation to and in light of consultative examining psychologist Dr. Gray's findings. (Doc. #8, *PageID* #2531).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2).

An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

These latest regulations "still require that the ALJ provide a coherent explanation of [his] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

*Consultative psychological examiner*

Consultative psychological examiner Dr. Gray examined Plaintiff on January 20, 2023. (Doc. #7-7, *PageID* #s 995-98). The ALJ summarized this examination as follows:

> In January 2023, [Plaintiff] participated in a psychological consultative examination via telehealth. He noted his main mental health issues are anxiety and depression. He preferred to be alone and always has. He avoided public settings and only goes at less crowded hours. He indicated his anxiety caused stomach issues. He noted irritable and avoidant behaviors. He endorsed less motivation and lack of energy with depression, and he will oversleep when feeling down. He noted past suicidal feelings with no attempts. He denied any current suicidal ideation, homicidal ideation, or hallucinations. He reported issues with remembering to complete tasks at work. He had no previous psychiatric hospitalizations. He had no current outpatient therapy for mental health, though he had an upcoming appointment with a psychologist. He was on medication for anxiety that was prescribed by his primary care. [Plaintiff] described his mood as "good," and the examiner noted that he had a constricted affect. Behavior and motor activity were

normal and alert. Speech was coherent, and thought processes were organized. He was engaged at the onset of the evaluation, but his attitude toward the evaluator and evaluation was apathetic. He maintained good eye contact during the evaluation. His judgment and insight appeared to be intact. His quality of thinking was good. His fund of knowledge and estimated level of intellectual functioning was in the low average range. He displayed adequate effort and persistence during the evaluation. On examination, he was able to remember three unrelated words immediately, and he was able to recall all three after a brief delay, indicating an unimpaired delayed memory. He was able to accurately complete serial 7s starting at 100. He was able to spell the word "world" forward and backward. He was able to correctly recall a series of three numbers forward and backward. His responses to hypothetical questions indicated good moral judgment and good logical reasoning. He was able to complete a simple subtraction problem, suggesting he had no difficulty with simple math. He was diagnosed with an unspecified anxiety disorder and an unspecified depressive disorder.

(Doc. #7-2, *PageID* #s 54-55) (internal citations omitted). Based on a review of Dr. Gray's consultative examination, the ALJ's summary of Dr. Gray's record is accurate. (Doc. #7-7, *PageID* #995-998).

Dr. Gray found Plaintiff had no limitations with simple directions but mild limitations with more complex commands, as evident by his reports of past work history and being overwhelmed. (Doc. #7-7, *PageID* #998). Dr. Gray also determined that Plaintiff would have restrained limitations with sustained concentration and lacked the ability to persist in work activity, effectively socialize with others, and effectively cope with normal pressures in past work environments due to feeling like others were looking over his shoulder. *Id.*

The ALJ found Dr. Gray's opinion "somewhat persuasive." (Doc. #7-2, *PageID* #61). The ALJ explained, "the opinion was vague as to the degree of limitations, is not placed in vocationally relevant terms, and is only somewhat supported by his examination, which indicated better functioning than suggested by the opinion." *Id.* As an example, the ALJ cited to a portion of Dr.

7

Gray's report that stated Plaintiff displayed adequate effort and persistence during the evaluation and noted no issues with tasks that address attention and concentration, including serial 7s, mental calculations, spelling and repeating numbers in reverse, and remembering words. *Id.* (citing Doc. #7-7, *PageID* #s 996-97). The ALJ concluded that such findings did not support the severity of concentration issues suggested by the opinion. *Id.* The ALJ next noted that Dr. Gray reported that Plaintiff had friends that he interacted with online, which demonstrated better social abilities than Dr. Gray opined. *Id.* (citing Doc. #7-7, *PageID* #996). The ALJ also explained that Dr. Gray's opinion was only somewhat supported by and consistent with treatment notes, which demonstrated adequate mental functioning on mental status examinations despite only receiving limited, conservative treatment. (Doc. #7-2, *PageID* #61). The ALJ cited several examples: primary care notes reflected normal mood, behavior, thought content, and judgment on examination, (Doc. #7-8, *PageID* #1015); neurology notes reflected that his conversational discourse was unremarkable, he responded promptly and reasonably to all queries, and he was in good spirits, *Id.* at 1010; and at his diagnostic assessment with his mental healthcare provider, his behavior was cooperative, his eye contact was good, he had no abnormalities in cognition, including with respect to memory or attention and concentration, his appearance was normal and well groomed, he was appropriately dressed, and his insight and judgment appeared intact. (Doc. #7-9, *PageID* #s 1530-31).

Because the ALJ properly considered consistency and supportability, the ALJ did not err in his treatment of Dr. Gray's opinion.[2] 20 C.F.R. § 416.920c(b)(2). Likewise, because the ALJ

---

[2] To the extent that Plaintiff takes issue with the ALJ's treatment of the limitations opined in Dr. Gray's opinion, Plaintiff's argument is not well taken. An ALJ is not required to adopt a medical opinion verbatim. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). When the ALJ finds a physician's opinion to be "somewhat persuasive" and indicates that she has adopted the physician's opinions, she must either incorporate the opined limitations or provide an explanation for declining to do so. *Wood v. Comm'r of Soc. Sec.*, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio Apr. 16, 2019), *report and recommendation adopted*, No. 3:18-CV-76, 2019 WL 1958663

provided "a coherent explanation of [his] reasoning," *Lester*, 2020 WL 8093313, at *14, that "set forth a 'minimum level of articulation'" in addressing the level of persuasion attributed to Dr. Gray's opinion, the ALJ did not err. *Warren*, 2021 WL 860506, at *8. More plainly, in his decision, the ALJ clearly "shows his or her work" and provides a clear and accurate logical bridge. *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-cv-129, 2022 WL 4484603, at *11–12 (S.D. Ohio Sept. 27, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 2021 WL 3702170, at *6 (E.D. Mich. 2021)).

### State agency psychologists

ALJ Schwalbach considered the opinion of state agency psychologist Dr. Todd, who reviewed Plaintiff's records on March 1, 2023. (Doc. #7-2, *PageID* #57) (citing Doc. #7-3, *PageID* #157-63). Dr. Todd opined that Plaintiff had mild limitations in adapting or managing oneself and understanding, remembering, or applying information and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (Doc. #7-3, *PageID* #s 160). Dr. Todd adopted the mental RFC finding from the March 2021 ALJ decision.[3] *Id.* at 160, 163. Dr. Todd limited Plaintiff to performing simple, routine repetitive tasks, occasional contact with co-workers and supervisors, no public contact, no fast-paced production work or jobs that involve strict production quotas, and jobs that involve very little, if any, change in the job duties or the work routine from one day to the next. *Id.* at 163. Additionally, the ALJ considered the opinion of state agency psychologist Dr. Haskins. (Doc. #7-2, *PageID* #57) (citing Doc. #7-3, *PageID* #s 166-71).

---

(S.D. Ohio May 2, 2019). As discussed above, ALJ Schwalbach has done so in the instant matter.

[3] Plaintiff previously filed for SSI and DIB. Those claims were denied in an administrative decision on March 25, 2021. (*See* Doc. #7-3, *PageID* #s 124-49).

Dr. Haskins reviewed Plaintiff's file upon reconsideration on June 7, 2023, and she affirmed Dr. Todd's assessment. *Id.* at 168, 171.

The ALJ found the prior administrative medical findings of Dr. Todd and Dr. Haskins to be "persuasive." (Doc. #7-2, *PageID* #57). He reasoned the opinions are not only "supported by explanation and citations to the record" but also "generally consistent with the record which does not indicate a significant change in mental functioning as demonstrated by unremarkable functioning on mental status examinations with limited mental health treatment." *Id.* The ALJ cited records showing that Plaintiff's primary care notes reflected normal mood, behavior, thought content, and judgment on examination. *Id.* (citing Doc. #7-8, *PageID* #1015). Further, Plaintiff's neurology notes reflected that his conversational discourse was unremarkable, he responded promptly and reasonably to all queries, and he was in good spirits. *Id.* (citing to Doc. #7-8, *PageID* #1010). The ALJ also cited to Dr. Gray's evaluation, which detailed that, at Plaintiff's diagnostic assessment with his mental healthcare provider at Samaritan Behavioral Health, his behavior was cooperative, his eye contact was good, he had no abnormalities in cognition, including with respect to memory or attention and concentration, his appearance was normal and well groomed, he was appropriately dressed, and his insight and judgment appeared intact. *Id.* (citing Doc. #7-9, *PageID* #s 1530-31). The ALJ found that "[s]uch findings do not indicate a change in mental functioning, and they are consistent with an ability to perform work activity within the limitations opined." *Id.*

Like his treatment of Dr. Gray's medical findings, the ALJ properly considered consistency and supportability when determining the level of persuasion of the opinions of Dr. Todd and Dr. Haskins. 20 C.F.R. § 416.920c(b)(2). Likewise, the ALJ provided an exceedingly coherent explanation of his reasoning, far surpassing the "minimum level of articulation" called for in

caselaw. *Lester*, 2020 WL 8093313, at *14; *Warren*, 2021 WL 860506, at *8. In finding the opinions of Dr. Todd and Dr. Haskin persuasive, ALJ Schwalbach accounts for the limitations opined in the findings. Therefore, ALJ Schwalbach did not err in his treatment of the opinions of Dr. Todd and Dr. Haskins.

**"Fresh Look" Analysis**

Next, Plaintiff argues that, because Dr. Todd and Dr. Haskins found Dr. Gray's "new and material limitations persuasive and supported and consistent," they must also adopt them. (Doc. #8, *PageID* #2533). "That is, a 'fresh look' analysis would require Drs. Todd and Haskins to adopt Dr. Gray's admittedly persuasive, well-supported, consistent findings." *Id.*

The Social Security Administration issued AR 98-4(6) following the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). In *Drummond*, the Sixth Circuit held that the principles of *res judicata* apply to both disability applicants and the Commissioner in Social Security cases. 126 F.3d at 841. Specifically, the *Drummond* Court found that, absent evidence of "changed circumstances" relating to an applicant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842. In response to *Drummond*, the Social Security Administration subsequently issued the aforementioned AR 98-4(6), which provides:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

11

AR 98-4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

Thereafter, the Sixth Circuit clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). In *Earley*, the Sixth Circuit explained that *res judicata* only applies if an applicant files a subsequent application for the same period of disability that was rejected in the prior decision. 893 F.3d at 933. The Sixth Circuit pointed out that *Drummond* was never intended to extend *res judicata* to foreclose review of a new application for a new period of time, reasoning that "[a]ny earlier proceeding that found or rejected the onset of disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id*. Rather, in cases where disability is alleged for a distinct period of time, the application is entitled to a "fresh look." *Id*. This, of course, is not to say that a subsequent ALJ cannot consider a prior ALJ's decision. After all, in the absence of new and additional evidence, the subsequent ALJ may treat the prior ALJ's findings as "legitimate, albeit not binding, consideration in reviewing a second application." *Id*. This Court has previously held that "as a matter of common sense, the holding in *Earley* must be extended to those reviewing doctors." *See Parrish v. Comm'r of Soc. Sec.*, No. 3:17-CV-411, 2019 WL 4667730, at *2 (S.D. Ohio Sept. 25, 2019) (Rice, D.J.). "[R]eviewing doctors who fail to provide their own fresh look of the evidence cannot constitute substantial evidence in support of an ALJ's decision." *Nadia A.T. v. Comm'r of the SSA*, No. 3:22-CV-12, 2023 WL 2401723, at *11 (S.D. Ohio March 7, 2023)

Plaintiff previously filed for benefits, which was denied by ALJ Gregory Kenyon in March 2021. (Doc. #7-3, *PageID* #s 127-141). Upon review of the record and the arguments of the parties, the undersigned finds that Dr. Todd and Dr. Haskins provided the necessary fresh look. First, both

12

Dr. Todd and Dr. Haskins reviewed and cited new evidence in the record, including a consultative examination by Dr. Gray received on January 30, 2023, non-medical evidence submitted by both parties in September 2022 and October 2022, and reports from Premier Health received in September 2022. (Doc. #7-3, *PageID* #s 159-72). Further, Dr. Todd and Dr. Haskins cite to Plaintiff's limited mental health treatment through his primary care physician as well as Dr. Gray's findings that Plaintiff showed "no limitations with simple directions," which they interpreted to mean Plaintiff showed normal attention and ability to follow instructions. *Id.* at 162, 170. Dr. Todd and Haskins also permissibly adopted the prior RFC after finding "no change in the claimant's condition," as determined from an analysis between prior medical evidence and new and additional medical evidence. *Id.* at 163, 171.

In short, Dr. Todd and Dr. Haskins provided the fresh look under *Earley* to which Plaintiff was entitled. Accordingly, the ALJ applied the correct legal standard, and Plaintiff's assignment of error is without merit.

**Step Five**

Next, we evaluate whether the ALJ erred at Step Five. An ALJ must consider a claimant's residual functional capacity, age, education, and work experience alongside the Medical-Vocational Guidelines when determining whether a successful adjustment to other work is possible. 20 CFR Part 404, Subpart P, Appendix 2. The Commissioner bears the burden of proving that a significant number of jobs exist in the national economy. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The Supreme Court has determined that "a vocational expert's testimony about the total number of jobs in the national economy available to the applicant may support the denial of benefits." *Norris v.*

13

*Comm'r of Soc. Sec.*, 139 F.4th 541, 547 (6th Cir. 2025) (citing *Biestek v. Berryhill*, 587 U.S. 97, 105 (2019)); *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 904 (6th Cir. 2016). Furthermore, a qualified vocational expert's testimony may amount to substantial evidence. *Id.* (citing *Biestek*, 587 U.S. at 105-08; *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562 (6th Cir. 2002)).

Notably, hypothetical limitations posed to the vocational expert do not bind the ALJ to include those limitations in the RFC. *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("Indeed, the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations. That does not mean that the vocational expert's answer about the *hypothetical individual* binds the ALJ.") (internal citation omitted); *see also Beckham v. Comm'r of Soc. Sec.*, No. 1:19-CV-576, 2020 WL 5035451, at *9 (S.D. Ohio Aug. 26, 2020) (Litkovitz, M.J.) ("Simply posing a hypothetical question to the [vocational expert] does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations."). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

In the instant case, the vocational expert testified that, given all of the factors previously explored, Plaintiff could be able to perform the requirements of representative occupations, such as a warehouse checker, marker, and laundry folder. (Doc. #7-2, *PageID* #63). Each of the listed positions are "light, unskilled jobs with SVPs of two that exist in significant numbers in the national economy." *Id.* In support, the vocational expert testified that there are approximately

100,000 warehouse checker jobs, 90,000 marker jobs, and 120,000 laundry folder jobs in the national economy. *Id.* Further, the vocational expert testified that "an individual with the claimant's vocational profile and residual functional capacity would be able to perform" these jobs. *Id.* While emphasizing that "claimant's treatment notes do[] not support additional restrictions," the ALJ also considered sedentary, unskilled jobs for individuals with SVPs of two, finding 40,000 table worker jobs, 100,000 bench assembler jobs, and 35,000 weight tester jobs—explaining that, even if the greater limitations were to apply to Plaintiff, he would still be able to perform jobs found in significant numbers in the national economy. *Id.*

Upon request for clarification by Plaintiff's counsel, the vocational expert also testified that a claimant's inability to persist in work activity more than fifteen percent of the workday was work preclusive. (Doc. #7-2, *PageID* #92-93). The ALJ was within his discretion to disregard this testimony, however, because—while parties may pose hypothetical questions for the vocational expert to address—the ALJ is not bound to incorporate all testimony where the medical evidence is silent or inapposite. *Beckham*, 2020 WL 5035451, at *9. Here, as discussed above, the ALJ acknowledged Dr. Gray's finding that Plaintiff "has restrained limitations with sustained concentration and lacks ability to persist in work activity." (Doc. #7-7, *PageID* #998); *see also* (Doc. #7-2; *PageID* #61). However, the ALJ found Dr. Gray's opinion to be "vague as to the degree of limitations," "not placed in vocationally relevant terms," "only somewhat supported by his examination," and "only somewhat supported by and consistent with treatment notes." *Id.* The Commissioner further clarifies that in the medical opinion, specifically regarding Plaintiff's restrained limitations with sustaining concentration and his ability to persist in work activity, Dr. Gray fails to quantify the opined limitations. (Doc. #9, *PageID* #2543). There is no evidence in

15

the record to support Plaintiff's attorney's "hypothetical" that the "individual [who] has limitations with sustained concentration and lack[s] the ability to persist in work activity such that they [are] off task more than 15 percent of the workday . . ." applies to Plaintiff, and therefore, no evidence that Plaintiff is unable to work full time. (Doc. #7-2, *PageID* #s 92-93).

Therefore, the ALJ properly considered the vocational expert's testimony about the number of jobs in the national economy that are available to Plaintiff or to a hypothetical claimant with Plaintiff's age, education, work experience, and residual functional capacity. As such, the ALJ applied the correct legal standard under existing law. *See Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020).

For these reasons, Plaintiff's Statement of Errors is not well-taken.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #8) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.


March 30, 2026                                             *s/Peter B. Silvain, Jr.*
                                                           Peter B. Silvain, Jr.
                                                           United States Magistrate Judge

16